UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARIA G.,[1]

                                            Plaintiff,                Case # 23-CV-424-FPG

v.                                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.
_____

## INTRODUCTION

Plaintiff Maria G. brings this action pursuant to the Social Security Act, seeking review of the decision of the Commissioner of Social Security that found that she was no longer eligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 16. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In 2009, Plaintiff began receiving SSI benefits due to her impairments of organic mental disorder, learning disability, depression, hypothyroidism, anemia, and marijuana dependence in remission. Tr.[2] 110-16. In 2014, the Social Security Administration ("the SSA") conducted a periodic review of Plaintiff's eligibility and determined that she was no longer disabled. Tr. 13.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 5, 6.

1

The Court need not detail the subsequent procedural history; it suffices to say that Plaintiff has been challenging this determination ever since. Most recently, on February 8, 2023, Administrative Law Judge William M. Weir (the "ALJ") issued an unfavorable decision, finding that Plaintiff was no longer disabled as of May 16, 2014. Tr. 1929-44. Plaintiff has now filed this action for review of the Commissioner's decision. ECF No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.   Disability Determination

The SSA is required to periodically review a recipient's entitlement to DIB and SSI benefits. 20 C.F.R. §§ 404.1594, 416.994(a). "In implementing that directive, the Commissioner applies a multi-step sequential evaluation to determine whether an individual, once disabled,

remains disabled under the Act." *Bahaga v. Comm'r of Soc. Sec.*, No. 19-CV-5014, 2020 WL 5755020, at *3 (S.D.N.Y. July 2, 2020). For Title XVI claims, the regulations lay out seven steps:

> At the first step, the ALJ decides whether the claimant currently has an impairment or combination of impairments which meets or medically equals the criteria of an impairment in the Listings. If the impairment does not equal a listed impairment, the second step addresses whether there has been medical improvement in claimant's condition. If there has been medical improvement, at the third step, a determination is made whether such improvement is related to the claimant's ability to perform work – that is, whether there has been an increase in the individual's residual functional capacity ("RFC").
>
> If it is determined there has been no medical improvement, or the medical improvement is not related to the claimant's ability to work, then, as a fourth step, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. If, however, the medical improvement is related to the claimant's ability to work, the Commissioner goes to the fifth step and inquires whether all of the claimant's current impairments in combination are severe – that is, whether they impose more than a minimal limitation on her physical or mental ability to perform basic work activities.
>
> At the sixth step, if the claimant's current impairments are severe, the ALJ must determine whether the claimant can perform her past relevant work. If not, or if there is no past relevant work, at the seventh step, the ALJ considers whether other work exists that the claimant can perform, given her RFC, age, education, and past work experience. If the claimant can perform other work, she is no longer disabled.

*Id.* at *3-4 (internal citations omitted); *see generally* 20 C.F.R. § 416.994. Title II claims entail a similar process, except that the ALJ must preliminarily determine whether the claimant is engaging in substantial gainful activity. *See Roosevelt W. v. Comm'r of Soc. Sec.*, No. 19-CV-6827, 2021 WL 4481198, at *2-3 (W.D.N.Y. Sept. 30, 2021); *see generally* 20 C.F.R. § 404.1594.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. The ALJ concluded that Plaintiff continued to suffer from severe impairments of organic mental disorder, learning disability, depressive disorder, and anxiety disorder, with several nonsevere

impairments. Tr. 1940. However, as of May 16, 2014, Plaintiff had medically improved to the point that she could perform the full range of work at all exertional levels, but with additional non-exertional limitations. Tr. 1942. Because the ALJ found that Plaintiff could perform a significant number of jobs in the national economy in light of her RFC, he concluded that Plaintiff's disability ended as of May 16, 2014. Tr. 1942-44.

## II.  Analysis

Plaintiff argues that remand is warranted on several grounds.

### a. Cognitive Functioning

Plaintiff alleges that her "limited intellectual functioning" has not improved. ECF No. 9-1 at 20. She argues that, in concluding otherwise, the ALJ failed to sufficiently consider past evidence of her cognitive limitations and failed to properly analyze the medical opinions in the record. *Id.* at 18-24, 25-31. Plaintiff's argument rests on a misapprehension of the ALJ's decision.

Under the regulations, medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). While the ALJ must determine that medical improvement has occurred before proceeding through the next steps of the evaluation process, *id.* §§ 404.1594(f)(3), 416.994(b)(5)(ii), he need not make a finding of medical improvement with respect to *every* impairment that the claimant was found to have at the time of the prior decision. *See Stacie C. v. Kijakazi*, No. 21-CV-5335, 2023 WL 2749140, at *4 n.2 (C.D. Cal. Mar. 30, 2023) (rejecting claim that the ALJ was required to find medical improvement in claimant's "intellectual functioning" before terminating benefits, where the ALJ had found medical improvement with respect to claimant's "asthma and COPD").

In this case, the ALJ found that Plaintiff had improved physically and mentally since May 2014.  Tr. 1935, 1939-40.  But this does not mean, as Plaintiff argues, that the ALJ found that Plaintiff's intellectual functioning in particular had improved.  Rather, the ALJ's focus was on Plaintiff's improvement to her mood, Tr. 1935, and to her physical abilities, Tr. 1939-40.  With treatment, Plaintiff's mood had stabilized, and the ALJ noted that Plaintiff was doing community service at a local church and going to the gym.  Tr. 1935.  Indeed, the ALJ accepted Plaintiff's claims regarding her consistently limited intellectual functioning, which is why he imposed such stringent RFC restrictions.  *See* Tr. 1940, 1942.  The substantive similarities between Plaintiff's prior RFC and current RFC confirm this.

In the original decision, the ALJ identified several functional restrictions related to Plaintiff's mental impairments.  She found that Plaintiff had marked limitations in her abilities to (1) understand, remember, and carry out complex instructions, (2) make judgment on complex work-related decisions, and (3) interact appropriately with the public.  Tr. 112.  Plaintiff was moderately limited in her abilities to (4) interact appropriately with supervisors and/or co-workers; (5) respond appropriately to usual work situations and to changes in a routine work setting, (6) understand and remember simple and/or detailed instructions, (7) carry out detailed instructions, (8) maintain attention and concentration for extended periods; (9) work in coordination with or proximity to others without being distracted by them; and (10) set realistic goals or make plans independently of others.  Tr. 112-13.

In the most recent decision, the ALJ prohibited Plaintiff from performing any complex work, including the need to independently set objectives (which corresponds to restrictions (1), (2), and (10) above).  Tr. 1942.  He limited Plaintiff to simple and repetitive one- and two-step tasks that could be changed only once per workday  (which corresponds to restrictions (5), (6), (7),

5

and (8) above).  *Id.*  Furthermore, the ALJ limited Plaintiff to occasional contact with supervisors and coworkers and no contact with the public (which corresponds to restrictions (3) and (4) above). *Id.*  Plaintiff does not contend that the RFCs are inconsistent in these respects.

Because the ALJ retained the restrictive mental limitations contained in the prior RFC, the ALJ's decision cannot be read, as Plaintiff contends, to rest on the finding that Plaintiff's "cognitive ability" improved.  ECF No. 9-1 at 20.  Rather the ALJ found that Plaintiff's intellectual functioning remained stable during the relevant period.  Accordingly, while Plaintiff inveighs against the ALJ's finding of medical improvement and his alleged failure to properly consider her earlier records and the medical opinions, in substance the ALJ's opinion is largely consistent with Plaintiff's position that she had not improved with regard to her mental impairments.

The only ways in which the ALJ's decision diverges from the prior RFC is that it (1) omits a moderate limitation in travelling in unfamiliar places or using public transportation, and (2) increases Plaintiff's exertional ability to the extent that she can perform the full range of work at all exertional levels.  Tr. 112-13, 1942.  Plaintiff makes no specific arguments as to why these two findings are erroneous and prejudicial such that remand is warranted.

Therefore, based on the arguments that Plaintiff presents, she is not entitled to relief.[3]  *Id.*

   b. **GAF Scores**

Plaintiff argues that the ALJ improperly relied on GAF scores to find medical improvement.  ECF No. 9-1 at 24-25.  Again, this argument rests on a misinterpretation of the ALJ's decision.  While the ALJ noted Plaintiff's GAF scores, Tr. 1935, he explicitly gave "reduced

---

[3] Plaintiff also argues that the current RFC precludes all substantial gainful activity because her cognitive limitations, and her need for limited supervisor contact, would prevent her from learning the essential duties of a job during the job's "probationary period."  ECF No. 9-1 at 22.  This argument is speculative.  While Plaintiff cites the vocational expert's testimony to suggest that she did not have the cognitive or social abilities required for the probationary period, *see id.*, the cited testimony only pertains to unscheduled absences during the probationary period.  *See* Tr. 1978-79.

weight" to them. Tr. 1938. Therefore, the ALJ's decision demonstrates that he properly treated the scores as having "limited probative value." *Wilson v. Saul*, No. 18-CV-1097, 2019 WL 2603221, at *7 (D. Conn. June 25, 2019).

### c. Highly Specific RFC

Plaintiff contends that one of the ALJ's RFC restrictions—that Plaintiff can only tolerate "one change per eight-hour workday in general work task or setting," Tr. 1942—is unsupported by substantial evidence. However, Plaintiff fails to identify any harmful error resulting from the inclusion of this restriction. *See* ECF No. 9-1 at 31-33; ECF No. 17 at 3. If anything, this limitation was to Plaintiff's benefit, as it imposes another restriction on Plaintiff's already limited functional capacity. Absent any argument that this limitation is less generous than what should have been included in the RFC, the Court cannot conclude that remand is warranted. *See Anissha W. v. Comm'r of Soc. Sec.*, No. 23-CV-6019, 2024 WL 123521, at *4 (W.D.N.Y. Jan. 11, 2024) (collecting cases).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 6, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York